## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: ) | |
| ) | Case No. 24-02261 |
| Everlast Epoxy Systems, Inc., ) | Chapter 11 (Subchapter V) |
| ) | Judge Charles M. Walker |
| Debtor. ) | |
| ) | |
| In re: ) | |
| ) | Case No. 24-02262 |
| Everlast Epoxy Flooring Company, ) | Chapter 11 (Subchapter V) |
| ) | Judge Charles M. Walker |
| Debtor. ) | |
| ) | |
| In re: ) | |
| ) | Case No. 24-02264 |
| David and Brandi Linton, ) | Chapter 11 (Subchapter V) |
| ) | Judge Charles M. Walker |
| Debtors. ) | |
| ) | *Joint Administration Requested* |

## DEBTORS' JOINT PLAN OF REORGANIZATION

The above-captioned debtors and debtors in possession, (collectively, the "Company" or the "Debtors") propose the following Joint Plan of Reorganization (the "Plan") pursuant to the provisions of Subchapter V of Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

## PLAN AND CONFIRMATION REQUIREMENTS

To confirm a plan under Bankruptcy Code section 1191, whether the plan is consensual or not, certain requirements must be satisfied under Bankruptcy Code section 1129(a), including, without limitation, the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7). See 11 U.S.C. § 1191. Thus, this Plan must provide Holders of Allowed Claims with more than they would receive if the Debtors filed for relief under Chapter 7 of the Bankruptcy Code. Additionally, the Plan must be "fair and equitable" (as defined by section 1191(c)), and the Bankruptcy Court must find that the Debtors will be, or are reasonably likely to be, able to make the Distributions as contemplated by the Plan. Additionally, the Plan must include: (a) a brief history of the business operations of the Debtors; (b) the Debtors' liquidation analysis; and (c) projections with respect to the Debtors' ability to make the Distributions provided for under the Plan. See 11 U.S.C. § 1190(1).

The Debtors submit that this Plan provides the necessary content required by Bankruptcy Code section 1190 and, as set forth more fully below, is confirmable under section 1191 because:

(i) pursuant to the terms of this Plan, Holders of Allowed Claims will receive more than they would in a hypothetical chapter 7 liquidation; (ii) it is "fair and equitable" within the meaning of section 1191(c) of the Bankruptcy Code; and (iii) it is feasible as the Debtors will be able to make the Distributions contemplated under the Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTORS

### A. Nature of the Business

Everlast Epoxy Systems, Inc. is a subchapter s corporation headquartered in Columbia, Tennessee. The entity was incorporated in Florida in 2006 and reincorporated in Delaware in 2020. The company specializes in manufacturing high-quality epoxy flooring. Everlast Epoxy sells flooring to commercial and government facilities both direct and through a nationwide network of 50+ dealers who are flooring installation contractors. Everlast Epoxy's mission is to contribute to the health of the public by providing the cleanest, healthiest, and safest flooring in the public facilities and businesses they frequent – so that the place has clean floors resulting in clean food to eat, clean surfaces, and clean air to breathe.

### B. Covid-19 Pandemic

In 2020, the Covid-19 pandemic caused significant supply chain disruptions, impacting sales and operations. As the pandemic continued, Everlast Epoxy accumulated EIDL and other loans while striving to adapt its business model to remain profitable.

Consequently, Everlast Epoxy Flooring Company was established to focus on installing the products made by Everlast Epoxy Systems, Inc. During this time, the sales representatives still directed most leads to dealers, and the company only quoted a few projects in-house.

### C. Texas Freeze

In 2021, the Texas freeze disrupted many chemical plants, affecting supply and pricing more significantly in 2022. This required the business to find alternative formulas, with costs rising on both sides of the epoxy (BIS-A prices increased due to Covid-19, and curative prices rose due to the Texas freeze).

### D. In-House Installation Challenges

In late 2022 and into 2023, the business began pushing in-house installations more aggressively, giving fewer leads to dealers as part of our strategy to adapt to the changing demands of the post-Covid economy.

As the in-house installation side of the business grew, it became increasingly difficult to manage, and resulted in a diversion of attention away from the core business of manufacturing. Additionally, manufacturing sales slumped because the Company was quoting to install jobs from long distance whereas before local dealers were quoting the same jobs resulting in fewer sales as the Company learned that its customers would prefer to award contracts to a local crew rather than bring in a crew from out of state. As a result, both the installation and the manufacturing sides of the businesses generated losses in 2023.

2

### E. Confluence of Factors Precipitated Need for Restructuring

The Company currently has 12 employees. While the core business is strong and viable, the cumulative impacts of the issues described above, and the excessive long-term debt the business accumulated as a result, necessitated the Chapter 11 filing. Because Mr. and Mrs. Linton personally guaranteed most of the company's obligations, they personally join in the Subchapter V restructuring.

### F. Guarantors Join in Restructuring

Because David and Brandi Linton personally guaranteed the Company's significant obligations, they personally joined in the Company's Subchapter V restructuring. Mr. and Mrs. Linton's only significant assets consist of equity in their primary residence in Franklin, Tennessee and equity in their former family home in Florda, which is presently under contract to be sold. The collective net value of the equity after accounting for exemptions, priority claims, and liquidation costs is approximately $200,000.

In addition to contributing their Disposable Income for 5 years, the Lintons' Plan proposes to contribute (from the Florida sale and refinancing the HELOC on their residence) $250,000 to the business to provide critically needed working capital and pay Effective Date obligations. The contribution (i) will enable the business, after the restructuring, to continue as a strong and stable going concern; (ii) demonstrates Mr. and Mrs. Linton's commitment to preserving the business, the jobs of its 12 dedicated employees, and the relationships with its loyal vendors, many of whom are also small businesses; and (iii) will enable a combined distribution to unsecured creditors from the Company and the individuals that will significantly exceed the amount that would be available if the assets of both the Company and individuals were liquidated.

### THE CHAPTER 11 CASES

On the Petition Date, the Debtors filed several "first day motions" seeking various forms of relief to enable an orderly transition into Chapter 11. Those motions include:

a. *Expedited Motion For Entry Of An Order Directing The Joint Administration Of Their Chapter 11 Cases*;

b. *Expedited Motion For Entry Of An Order Directing All Columbia Division Matters To Be Heard In Nashville;*

c. *Expedited Motion For Entry Of Order Authorizing Use Of Cash Collateral;*

d. *Expedited Motion For Entry Of Order Authorizing Maintenance And Use Of Existing Bank Accounts And Cash Management System;*

e. *Expedited Motion To Prohibit The Discontinuation Of Utility Services, Approve Adequate Assurance Of Payment, And Establish Procedures For Additional Adequate Assurance;*

f.      *Expedited Motion For Entry Of Order Authorizing Rejection Of Executory Contracts And Unexpired Leases;*

g.      *Expedited Motion To Sell Real Property And For Related Relief;*

h.      *Expedited Motion To Set Mandatory Status Conference;*

i.      *Expedited Motion For Order Authorizing And Directing Payment Of Preconfirmation Escrow Funds For Benefit Of Subchapter V Trustee; and*

j.      *Expedited Motion to Set All First Day Motions for Hearing.*

To enable the Debtors to conduct the Chapter 11 Cases in an efficient manner, certain other matters were filed on the Petition Date, and did not seek expedited relief, but did request relief that may occur within the first twenty-one days of the case. Those matters include:

k.      *Application for Order Approving Employment and Retention of EmergeLaw, PLC as Counsel for Debtors;*

l.      *Debtors' Joint Plan of Reorganization;* and

m.      *Submitted Order Establishing Confirmation Procedures and Setting Hearing on Debtors' Joint Plan of Reorganization.*

## THE PLAN

This Plan is the Debtors' comprehensive proposal to deleverage and pay creditors as much as the business can reasonably support. Creditors are urged to complete the attached ballot accepting the Plan and return it in the manner and by the date indicated on the ballot. Any questions about this Plan or requests for additional information should be directed to Debtors' counsel.

## ARTICLE I
## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code or Federal Rules of Bankruptcy Procedure.

**1.1.    Administrative Claim** means an administrative expense Claim under sections 503(a) and (b) of the Bankruptcy Code, including Fee Claims, whenever incurred and irrespective of whether any payment or transfer has been made on behalf of such administrative expense Claim.

**1.2.** **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the number of shares representing any Allowed Interest.

**1.3.** **Allowed Claim** means, with reference to any Claim: (i) a Claim against a Debtor, proof of which, if required, was Filed on or before the Bar Date, which is not a Contested Claim; (ii) if no proof of claim or interest was so Filed, a Claim against a Debtor that has been or hereafter is listed by a Debtor in its Schedules as liquidated in amount and not disputed or contingent and that has not been paid since the Petition Date pursuant to an Order of the Court; (iii) a Claim allowed by Final Order; or (iv) a Contested Claim that a Debtor decides to allow to become an Allowed Claim by initiating payments on its account pursuant to the Plan. Regardless of whether a proof of claim was filed, an Allowed Claim does not include any Claim or portion thereof which is a Disallowed Claim, or which is a Claim against a Debtor based on a guaranty, or which has been subsequently withdrawn, disallowed, released or waived by the Holder thereof, by this Plan, or pursuant to a Final Order.

**1.4.** **Avoidance Actions** means any and all Causes of Action arising under Chapter 5 of the Bankruptcy Code, including without limitation any and all actions to avoid and recover overpayments, preferential transfers, fraudulent transfers, and any and all turnover actions to recover money or property due to a Debtor, regardless of whether they arise Pre-Petition or after the Petition Date.

**1.5.** **Bankruptcy Code** means title 11 of the United States Code, as amended.

**1.6.** **Bankruptcy Court** means the United States Bankruptcy Court for the Middle District of Tennessee, Nashville Division.

**1.7.** **Bar Date** means the deadline to be set by the Court by which a Claim must be Filed. The Bar Date will apply for all Pre-Petition Claims, except for Claims held by governmental entities, and for administrative Claims allowed under section 503(b)(9) of the Bankruptcy Code. With respect to Claims based on an executory contract or unexpired lease rejected prior to the Effective Date, the Bar Date is the earlier of 30 days after entry of: (i) the Confirmation Order, and (ii) an Order approving such rejection. Should a Debtor amend its Schedules in the future to change the amount of any claim or change a claim to disputed, contingent, or unliquidated, "Bar Date" shall also mean, only with respect to those claims affected by the amendment, the later of the date set by the Court described in the preceding sentences, as applicable to the particular Claim, or the date that is 30 days from service of notice of the amendment to the Schedules, provided that if the 30th day falls on a day that is not a Business Day, then the deadline shall be extended to the first Business Day after the 30th day, and any Holder of an amended Claim shall file a proof of claim with the Clerk of the Court by such date or be forever barred from doing so.

**1.8.** **Business** means the combined operations of Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company, which are to be substantively consolidated as of the Effective Date.

**1.9.** **Business Day** means any day, other than a Saturday, Sunday, or legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.10. Causes of Action** means all claims or causes of action that belong to a Debtor and/or that were or could have been brought by a Debtor under state or federal law, including the Bankruptcy Code, but not including any actions released under the Plan. Such claims and causes of actions include, but are not limited to, any claim or cause of action under a policy of insurance, Avoidance Actions, and any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which either Debtor has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, interference with contractual or business relationships, concealment, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, and obligation of good faith and fair dealing, at law or in equity, in contract in tort, or otherwise, known or unknown, suspected or unsuspected.

**1.11. Chapter 11 Case** means the above entitled and numbered bankruptcy cases filed by Debtors pursuant to the provisions of Subchapter V of Chapter 11 of the Bankruptcy Code.

**1.12. Claim** means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.13. Claimant** means a holder of a Claim.

**1.14. Claims Objection Deadline** means the deadline for objecting to a Claim or Interest asserted against or in a Debtor, which shall be on the date that is the later of (a) 180 days after the Confirmation Date, and (b) such other date as may be specifically fixed by order of the Bankruptcy Court.

**1.15. Class** means all of the holders of Claims against a Debtor that have been designated as a class in this Plan.

**1.16. Commitment Period** means the 5-year period contemplated and set forth under Bankruptcy Code section 1191(c).

**1.17. Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

**1.18. Confirmation Date** means the date of entry by the Court of an order confirming the Plan.

6

**1.19. Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court in which Debtors shall seek Confirmation of this Plan.

**1.20. Confirmation Order** means the Order confirming this Plan, together with any supplements, amendments, or modifications thereto.

**1.21. Contested** when used with respect to a Claim or Interest, means a Claim against or Interest in a Debtor that is: (i) listed in a Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of Claim has been timely Filed; (ii) listed in a Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been Filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the amount or seeks better treatment than that provided for in a Debtor's Schedules; (iii) not listed in a Debtor's Schedules and as to which a proof of Claim has been timely Filed; or (iv) the subject of an objection which has been or may be timely Filed and which Claim or Interest has not been Allowed by Final Order.

**1.22. Creditor** means holder of a Claim as of the Petition Date.

**1.23. Cure Claim** means the amount owed to cure all defaults under any lease or executory contract as determined by agreement of a Debtor and the counterparty to the agreement or by Final Order.

**1.24. Debtor** means any one of Everlast Epoxy Systems, Inc., Everlast Epoxy Flooring Company, or David and Brandi Linton.

**1.25. Debtors** means Everlast Epoxy Systems, Inc., Everlast Epoxy Flooring Company, and David and Brandi Linton, or more than one of such entities as may be specified.

**1.26. Deficiency Claim** means an Allowed Claim of a Creditor, equal to the amount by which the aggregate Allowed Claims of such Creditor exceeds the sum of (a) any set off rights of the Creditor permitted under section 553 of the Bankruptcy Code, plus (b) the Secured Claim of such Creditor; provided, however, that if the Holder of a Secured Claim or the Class of which such Claim is a member makes the election provided in section 1111(b)(2) of the Bankruptcy Code, there shall be no Deficiency Claim in respect of such Claim.

**1.27. Disallowed Claim** means any Claim or Interest, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as Contingent, Disputed, or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely Filed or deemed timely Filed under applicable law.

**1.28. Disposable Income** shall have the meaning set forth in section 1191(d) of the Bankruptcy Code in the amount indicated on the budget attached as **Exhibit A** to this Plan for Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company, or **Exhibit B** to this Plan for the individual Debtors, less payments to Secured Claims, Administrative Claims, and Priority Claims.

**1.29.    Distribution** means cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under the Plan.

**1.30.    Effective Date** means the earlier of (i) the first business day of the month that is more than 90 days after the date on which the Confirmation Order becomes a Final Order, or (ii) at the Debtors' option, the date on which a Distribution is made.

**1.31.    Estate** means the bankruptcy estate of a Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

**1.32.    Estimated Claim** means any Contested Claim which is estimated in accordance with section 502(c) of the Bankruptcy Code. For purposes of voting and distribution under the Plan, the estimated amount of such Contested Claim shall be deemed the Allowed Amount of such Claim. For the full satisfaction of its Contested Claim and its related Allowed Claim, a Claimant shall have, as its sole and exclusive remedy, the rights to payment provided under this Plan and shall have no other rights or remedies and may not, following Substantial Consummation, assert any other right against a Debtor, Claimant's estimated and Allowed Claim being fully satisfied by the Debtors' payment obligations described in this Plan, and any amount in excess thereof being fully released, voided, and discharged by the confirmation of this Plan.

**1.33.    Fee Claim** means a Claim for fees and expense reimbursements under sections 330 or 503(b) of the Bankruptcy Code.

**1.34.    Filed**, **File** and **Filing** mean filed with the Bankruptcy Court through its electronic filing procedure.

**1.35.    Final Distribution** shall mean the last distribution required by the Plan to be made to any particular Class of Creditors.

**1.36.    Final Order** means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing, shall then be pending; or (ii) in the event that an appeal, writ of certiorari, re-argument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for re-argument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order at the option of the Debtors or either of them if no stay pending appeal has been obtained.

**1.37.    Governmental Authority** means any agency of the United States, any state, or any municipality, including without limitation, any governmental agency designated to collect taxes on behalf of the United States, any state, or any municipality.

**1.38.    Holder** means the beneficial holder of a Claim or Interest.

**1.39. Impaired** means the treatment of an Allowed Claim under this Plan unless, with respect to such Claim, either: (i) this Plan leaves unaltered the legal, equitable, and contractual rights to which such Claim entitles the holder of such Claim; or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, a Debtor (a) cures any default that occurred before, on or after the commencement of the Chapter 11 Case other than default of the kind specified in section 365(b)(2) of the Bankruptcy Code; (b) reinstates the maturity of such Claim as such maturity existed before such default; (c) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (d) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim or Interest.

**1.40. Interest** means equity ownership in a Debtor.

**1.41. Lien** means all liens, security interests, claims and encumbrances against any property of a Debtor's Estate.

**1.42. Order** means an order or judgment of the Bankruptcy Court or any higher Court or tribunal with respect to the Chapter 11 Case.

**1.43. Penalty Claims** means those Claims referenced in Bankruptcy Code section 726(a)(4), including without limitation any claims for punitive, liquidated, or exemplary damages.

**1.44. Person** includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

**1.45. Petition Date** means June 20, 2024.

**1.46. Plan** means this Joint Plan of Reorganization, as it may be amended or modified from time to time as permitted herein or in accordance with section 1193 of the Bankruptcy Code.

**1.47. Plan Documents** means this Plan and any other documents necessary to effectuate this Plan, and all exhibits and attachments to any of the foregoing.

**1.48. Post-Petition** means after the commencement of this Chapter 11 Case.

**1.49. Pre-Petition** means before the commencement of this Chapter 11 Case.

**1.50. Priority Claim** means all Claims entitled to priority under section 507(a)(2)- (a)(7) (a)(8) and (a)(9) of the Bankruptcy Code.

**1.51. Pro Rata** means in the same proportion that the amount of an Allowed Claim in any Class or Classes of Claims bears to the aggregate amount of all Claims in such Class(es), including in such aggregate amount both the Allowed Claims and any then unresolved Disputed Claims which may apply to that Class(es) of Claims as of the date of any distribution payment made pursuant to this Plan.

**1.52. Reorganized Debtor** shall mean a Debtor as of the Confirmation Date, reorganized pursuant to this Plan.

**1.53. Retained Assets** means all property of the estate of a Debtor that is not expressly abandoned by such Debtor pursuant to the Plan, the Confirmation Order, or another Final Order of the Court.

**1.54. Schedules** means those schedules and statements of financial affairs Filed by each Debtor under Federal Rule of Bankruptcy Procedure 1007 as same may be amended from time to time.

**1.55. Secured** means an Allowed Claim that is secured by a properly perfected, enforceable lien on or security interest in property in which an Estate has an interest, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of a Claimant's interest in the Estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

**1.56. Subchapter V Trustee** means the duly appointed Subchapter V Trustee in these cases, or any successor Subchapter V Trustee duly appointed by the United States Trustee.

**1.57. Substantial Consummation** means the date upon which Distributions under this Plan commence.

**1.58. Taxes** means and includes all federal, state, county and local income, *ad valorem*, excise, stamp and other taxes of any type or nature whatsoever.

**1.59. Tax Claims** mean any and all Secured or Priority Claims of any Person for the payment of any Taxes (a) accorded a priority pursuant to section 507(a)(8) of the Bankruptcy Code (but excluding all Claims for Post-Petition interest and Pre-Petition and Post-Petition penalties), or (b) secured by valid Liens on assets of a Debtor existing on the Confirmation Date (but excluding all Claims for Post-Petition interest and Post-Petition penalties).

**1.60. Unsecured Claim** means any Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, including but not limited to: (a) Claims under executory contracts and unexpired leases that have heretofore been rejected, that are rejected under this Plan or that may be rejected in accordance with the terms of this Plan (but not including administrative expenses arising from an executory contract or unexpired lease which has heretofore been rejected); (b) Claims for unpaid wages or benefits (including claims for vacation, sick and holiday pay) to the extent not entitled to be Priority Claims as provided herein; and (c) any other obligations, liabilities, damages or any other Claim held against a Debtor of every type and nature whatsoever incurred on or before the date of filing of this Chapter 11 Case.

Case 1:24-bk-02261   Doc 24   Filed 06/20/24   Entered 06/20/24 16:43:36   Desc Main
Document    Page 10 of 30

# ARTICLE II
## TREATMENT OF NON-CLASSIFIED CLAIMS

Administrative Claims and Priority Tax Claims are not classified under section 1123(a)(1) of the Code for purposes of voting or receiving distributions under the Plan. However, under section 1191(e) of the Code administrative expenses may be paid through the Plan. This Plan proposes to pay Administrative Claims in the manner described in section 2.1 of the Plan, but reserves the right, upon request to the Court, at or prior to the Confirmation Hearing, to pay through the Plan such Administrative Claims or any portion thereof necessary to obtain confirmation under section 1191(e) of the Code, in which case such Administrative Claims shall be treated under Class 1 of this Plan.

### 2.1. Certain Administrative Claims.

**(a)  General Allowed Administrative Claims**. Each holder of an Administrative Claim shall receive either: (i) with respect to Administrative Claims which are not Contested by the Debtors, the amount of such Holder's Allowed Administrative Claim in cash on the Effective Date; (ii) with respect to Administrative Claims which become Allowed Claims after the Effective Date, the amount of such Holder's Allowed Claim in one cash payment as soon as practicable after such claim becomes an Allowed Administrative Claim; or (iii) such other treatment agreed upon by the Debtors and such Holder; provided, however, that any such Administrative Claim representing a liability incurred in the ordinary course of business after the Petition Date by the Debtors shall be paid in accordance with the terms and conditions of the particular transaction giving rise to such liability and any agreements relating thereto. Any Person that asserts an Administrative Claim that is due but not paid on the Effective Date shall be required to file with the Court an application for allowance and payment of such asserted Administrative Claim and to serve notice thereof on all parties entitled to such notice. Any such claims must be filed within sixty (60) days after the Effective Date. The failure to file timely the application as required under this section 2.1(a) of the Plan shall result in the Claim being forever barred and discharged. An Administrative Claim with respect to which an application has been properly Filed pursuant to this section 2.1(a) of this Plan and to which no objection has been filed or an objection has been filed but overruled by Final Order of the Bankruptcy Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

**(b)  Fee Claims of Professionals.** Each professional person whose retention with respect to this Chapter 11 Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within one hundred and twenty (120) days after the Confirmation Date and to serve notice thereof on all parties entitled to such notice pursuant to applicable Bankruptcy Rules and in accordance with any orders entered in these cases regarding the compensation of professionals. Payments of Court-approved compensation shall be made promptly after the order approving such compensation becomes a Final Order. Debtors will not have any obligation for any Fee Claim that is disallowed or not approved by the Court.

**(c)  Administrative Tax Claims.** Each holder of an Administrative Claim for Taxes for which a Debtor is responsible and any other Taxes of a Debtor payable pursuant to

Case 1:24-bk-02261   Doc 24   Filed 06/20/24   Entered 06/20/24 16:43:36   Desc Main
Document      Page 11 of 30

section 507(a)(1) of the Bankruptcy Code shall be paid the Allowed Amount of such holder's Claim in cash, in full, on the latest of: (i) the Effective Date, (ii) if Contested or unknown to Debtor, the date such Claim is Allowed by Final Order, or (iii) the date such payment is due under applicable law. Any Person that asserts an Administrative Claim for Taxes due prior to, but that is not paid on the Effective Date, shall be required to file with the Court an application for payment of such asserted Administrative Claim and to serve notice thereof on all parties entitled to such notice. Any such claims must be filed within sixty (60) days from the Effective Date. The failure to file timely the application as required under this section 2.1(c) of the Plan shall result in the Claim being forever barred and discharged. An Administrative Claim for Taxes with respect to which an application has been properly Filed pursuant to this section 2.1(c) of this Plan and to which no objection has been filed or an objection has been Filed but overruled by the Court, shall become an Allowed Administrative Claim to the extent such claim is allowed by Final Order.

**(d)      Payment of Fees to Subchapter V Trustee.** Allowance and payment of fees of the Subchapter V Trustee shall be treated in the same manner as fee claims of professionals set forth in Section 2.1(b) of this Plan.

**2.2.      Secured and Priority Tax Claims**.

**(a)      Secured and Priority Tax Claims**. Unless otherwise agreed to by a Debtor and any taxing authority, a Debtor shall pay in full all Allowed Tax Claims over a period ending not later than five years after the Petition Date. A Debtor may in its sole discretion choose to make partial payments on Allowed Tax Claims, which payments shall be applied as indicated by Debtor. Any unpaid portion of such Allowed Priority Claims shall bear interest from the Effective Date until the date of payment at the minimum rate required by the Bankruptcy Code. Allowed Tax Claims include:

i.      Priority Tax Claim of Tennessee Department of Revenue against Debtor Everlast Epoxy Systems, Inc. in the amount of $17,918.06;

ii.      Priority Tax Claim of Internal Revenue Service against Debtors David and Brandi Linton in the amount of $35,108.71; and

iii.      Priority Tax Claim of Delaware Department of Revenue (Harvard Business Services) against Debtor Everlast Epoxy Flooring Company in the amount of $447.52.

**(b)      Liens Arising from Secured and Priority Tax Claims**. All Pre-Petition liens arising from Secured Tax Claims and Priority Tax Claims shall continue until such Claims are paid in full.

**(c)      Penalties and Allowed Claims.** Except as provided herein, no Governmental Authority shall be entitled to receive any penalties for any period, nor shall any Allowed Tax Claim include any Post-Petition interest. Any portion of a Tax Claim that qualifies as a Penalty Claim shall be treated as an Unsecured Claim. Each Contested Tax Claim shall

become an Allowed Tax Claim only upon entry of, and only to the extent such claim is allowed by a Final Order or agreement of a Debtor.

## ARTICLE III
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

Pursuant to section 1123 of the Bankruptcy Code, the Debtors designate the following Classes and Subclasses of Claims and Interests.

**3.1.     Class 1 – Administrative Claims Not Paid on the Effective Date**. Class 1 includes administrative expense priority claims that are not paid in full on the Effective Date. Debtors are not aware of any such claims, but if necessary to confirm this Plan, Debtors reserve the right to pay Administrative Claims through the Plan pursuant to Section 1191(e) of the Bankruptcy Code.

**3.2.     Class 2 – Priority Claims Other Than Priority Tax Claims**. Class 2 consists of all Allowed Priority Claims other than Priority Tax Claims against the Debtors, excluding any such Claims that were paid prior to the Effective Date.

**3.3.     Class 3 – Secured Claim of First-Citizens Bank & Trust Company ("First Citizens").** Class 3 consists of the Allowed Secured Claim of First Citizens secured by valid, perfected, first-priority liens on substantially all assets of Debtor Everlast Epoxy Systems, Inc. as more particularly described in the documents creating and perfecting the liens (the "Class 3 Collateral"). Pursuant to 11 U.S.C. § 506(a), the Class 3 Claim shall be Allowed in the amount of $158,711.28, which is the value of the Class 3 Collateral.

**3.4.     Class 4 – Secured Claim of Fundation Group, LLC ("Fundation").** Class 4 consists of the Secured Claim, if and when Allowed, of Fundation secured by a first-priority lien on substantially all assets of Debtor Everlast Epoxy Flooring Company, as more particularly described in the documents creating and perfecting the lien (the "Class 4 Collateral"). Pursuant to 11 U.S.C. § 506(a), the Class 4 Claim shall be Allowed in the amount of $10,000.00, which is the value of the Class 4 Collateral.

**3.5.     Class 5 – Secured Claim of Ford Motor Credit Company ("Ford").**

    **A.**  Class 5A consists of the Allowed Secured Claim of Ford against Debtor David Linton secured by a valid, perfected, first-priority lien on a 2022 Ford F150 (VIN 1FTFW1E57NKE77166) as more particularly described in the documents creating and perfecting the lien (the "Class 5A Collateral"). Pursuant to 11 U.S.C. § 506(a), the Class 5A Claim shall be Allowed in the amount of $37,500.00, which is the value of the Class 5A Collateral.

    **B.**  Class 5B consists of the Allowed Secured Claim of Ford against Debtor David Linton secured by a valid, perfected, first-priority lien on a 2022 Ford Bronco as more particularly described in the documents creating and perfecting the lien (the

"Class 5B Collateral"). Pursuant to 11 U.S.C. § 506(a), the Class 5B Claim shall be Allowed in the amount of $25,000.00, which is the value of the Class 5B Collateral.

**3.6.** **Class 6 – Secured Claim of UniCarriers Capital ("UniCarriers").** Class 6 consists of the Allowed Secured Claim of UniCarriers against Debtor Everlast Epoxy System, Inc. secured by a valid, perfected, first-priority lien on a forklift as more particularly described in the documents creating and perfecting the lien (the "Class 6 Collateral"). Pursuant to 11 U.S.C. § 506(a), the Class 6 Claim shall be Allowed in the amount of $12,000.00, which is the value of the Class 6 Collateral.

**3.7.** **Class 7 – Secured Claim of PennyMac Loan Services, Inc. ("PennyMac").** Class 7 consists of the Allowed Secured Claim of PennyMac against Debtors David and Brandi Linton secured by a valid, perfected, first-priority lien on real property located at 125 Stream Valley Blvd., Franklin, TN 37064 as more particularly described in the documents creating and perfecting the lien (the "Class 7 Collateral").

**3.8.** **Class 8 – Secured Claim of F&M Bank ("F&M").** Class 8 consists of the Allowed Secured Claim of F&M against Debtors David and Brandi Linton secured by a valid, perfected, second-priority lien on real property located at 125 Stream Valley Blvd., Franklin, TN 37064 as more particularly described in the documents creating and perfecting the lien (the "Class 8 Collateral").

**3.9.** **Class 9 – Secured Claim of Fifth Third Bank ("Fifth Third").** Class 9 consists of the Allowed Secured Claim of Fifth Third against Debtor David Linton secured by a valid, perfected, first-priority lien on a 2021 Jeep Gladiator as more particularly described in the documents creating and perfecting the lien (the "Class 9 Collateral").

**3.10.** **Class 10 – Secured Claim of GM Financial ("GM").** Class 10 consists of the Allowed Secured Claim of GM against Debtor David Linton secured by a valid, perfected, first-priority lien on a 2021 Chevy Suburban as more particularly described in the documents creating and perfecting the lien (the "Class 10 Collateral"). Pursuant to 11 U.S.C. § 506(a), the Class 10 Claim shall be Allowed in the amount of $55,000.00, which is the value of the Class 10 Collateral.

**3.11.** **Class 11 – Secured Claim of Rushmore Servicing ("Rushmore").** Class 11 consists of the Allowed Secured Claim of Rushmore against Debtors David and Brandi Linton secured by a valid, perfected, first-priority lien on real property located at 171 SW Broadleaf Ct., Lake City, FL 32024 (the "Class 11 Collateral").

**3.12.** **Class 12 – Essential Trade Creditors of Debtor Everlast Epoxy Systems, Inc.** Class 12 consists of the Allowed Claims against Debtor Everlast Epoxy Systems, Inc. listed on **Exhibit C** to this Plan as may be revised prior to the Effective Date. Holders of Class 12 Claims include those determined by the Debtor to be essential trade creditors that continue to do business, and/or may have particular lien, reclamation, or other rights with respect to goods sold or services provided to the Debtor.

**3.13.    Class 13 – General Unsecured Claims of Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company.** Class 13 consists of all Allowed Claims against Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company that are not Secured or Priority Claims or included in any other Class.

**3.14.    Class 14 – General Unsecured Claims of Debtors David and Brandi Linton.** Class 14 consists of all Allowed Claims against Debtors David and Brandi Linton (or either of them) that are not Secured or Priority Claims or included in any other Class.

**3.15.    Class 15 – Interests**. Class 15 includes all equity and ownership interests in the Debtors.

# ARTICLE IV
## PROVISIONS FOR SATISFACTION
## OF CLASSIFIED CLAIMS

The Claims as classified in Article III hereof shall be satisfied in the manner set forth in this Article IV. The treatment of, and the consideration to be received by each Person holding an Allowed Claim against a Debtor pursuant to this Plan shall be in full settlement, satisfaction, release, and discharge of such Allowed Claim.

**4.1.    Class 1 – Administrative Claims Not Paid on the Effective Date**. If necessary to obtain Confirmation of this Plan under section 1191(e) of the Code, Administrative Claims not paid in full on or before the Effective Date shall be fully paid over a period not to exceed 5 years following the Effective Date.

**4.2.    Class 2 – Priority Claims Other Than Priority Tax Claims**. Each Person holding a Class 2 Claim shall be paid the Allowed Amount of such Claim in cash, in full, on the latest of: (i) the Effective Date; (ii) the date such Claim is allowed by Final Order; or (iii) the date such payment is due under applicable law. Each Contested Priority Claim shall become an Allowed Priority Claim only upon entry of, and only to the extent such claim is allowed by, a Final Order.

**4.3.    Class 3 – Secured Claim of First-Citizens Bank & Trust Company ("First Citizens").** The Class 3 Claim shall be Allowed in the amount of $158,711.28 and shall be amortized and paid in monthly installments of $over a period of 5 years with interest at the rate of 8.5% per annum. The first payment shall be due on the 20th day of the month following the Effective Date, and subsequent payments shall be due on the 20th day of each successive month until paid in full. First Citizens shall retain its liens on the Class 3 Collateral until the Class 3 Claim is paid in full.

**4.4.    Class 4 – Secured Claim of Fundation Group, LLC ("Fundation").** The Class 4 Claim shall be Allowed in the amount of $10,000.00 and shall be amortized and paid in monthly installments of $205.17 over a period of 5 years with interest at the rate of 8.5% per annum. The first payment shall be due on the 20th day of the month following the Effective Date, and

subsequent payments shall be due on the 20th day of each successive month until paid in full. Fundation shall retain its lien on the Class 4 Collateral until the Class 4 Claim is paid in full.

**4.5.    Class 5 – Secured Claim of Ford Motor Credit Company ("Ford").**

    **A.**    The Class 5A Claim shall be Allowed in the amount of $37,500.00 and shall be amortized and paid in monthly installments of $769.37 over a period of 5 years with interest at the rate of 8.5% per annum. The first payment shall be due on the 20th day of the month following the Effective Date, and subsequent payments shall be due on the 20th day of each successive month until paid in full. Ford shall retain its lien on the Class 5A Collateral until the Class 5A Claim is paid in full.

    **B.**    The Class 5B Claim shall be Allowed in the amount of $25,000.00 and shall be amortized and paid in monthly installments of $512.91 over a period of 5 years with interest at the rate of 8.5% per annum. The first payment shall be due on the 20th day of the month following the Effective Date, and subsequent payments shall be due on the 20th day of each successive month until paid in full. Ford shall retain its lien on the Class 5B Collateral until the Class 5B Claim is paid in full.

**4.6.    Class 6 – Secured Claim of UniCarriers Capital ("UniCarriers").** The Class 6 Claim shall be Allowed in the amount of $12,000.00 and shall be amortized and paid in monthly installments of $246.20 over a period of 5 years with interest at the rate of 8.5% per annum. The first payment shall be due on the 20th day of the month following the Effective Date, and subsequent payments shall be due on the 20th day of each successive month until paid in full. UniCarriers shall retain its lien on the Class 6 Collateral until the Class 6 Claim is paid in full.

**4.7.    Class 7 – Secured Claim of PennyMac Loan Services, Inc. ("PennyMac").** The Class 7 Claim shall be paid according to the contract terms. PennyMac shall retain its lien on the Class 7 Collateral until the Class 7 Claim is paid in full.

**4.8.    Class 8 – Secured Claim of F&M Bank ("F&M").** The Class 8 Claim shall be paid according to the contract terms. F&M shall retain its lien on the Class 8 Collateral until the Class 8 Claim is paid in full.

**4.9.    Class 9 – Secured Claim of Fifth Third Bank ("Fifth Third").** The Class 9 Claim shall be paid according to the contract terms. Fifth Third shall retain its lien on the Class 9 Collateral until the Class 9 Claim is paid in full.

**4.10.    Class 10 – Secured Claim of GM Financial ("GM").** The Class 10 Claim shall be Allowed in the amount of $55,000.00 and shall be amortized and paid in monthly installments of $1,128.41 over a period of 5 years with interest at the rate of 8.5% per annum. The first payment shall be due on the 20th day of the month following the Effective Date, and subsequent payments shall be due on the 20th day of each successive month until paid in full. GM shall retain its lien on the Class 10 Collateral until the Class 10 Claim is paid in full.

**4.11.    Class 11 – Secured Claim of Rushmore Servicing ("Rushmore").** The Class 11 Claim shall be paid according to the contract terms. Rushmore shall retain its lien on the Class 11 Collateral until the Class 11 Claim is paid in full.

**4.12.    Class 12 – Essential Trade Creditors of Debtor Everlast Epoxy Systems, Inc.** Allowed Class 12 Claims shall be paid in full without interest on the Effective Date unless the Debtor and any such Holder agree to different terms.

**4.13.    Class 13 – General Unsecured Claims of Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company.** Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company shall be deemed substantively consolidated on the Effective Date. Each Holder of an Allowed Class 13 Claim shall be paid its Pro Rata portion of the Disposable Income of the Business in annual Distributions during the Commitment Period, with the first such payment due on first anniversary of the Effective Date.

**4.14.    Class 14 – General Unsecured Claims of Debtors David and Brandi Linton.** Each Holder of an Allowed Class 14 Claim shall be paid its Pro Rata portion of Debtor David and Brandi Linton's Disposable Income in annual Distributions during the Commitment Period, with the first such payment due on first anniversary of the Effective Date.

**4.15.    Class 15 – Interests**. Except for any property to be sold, abandoned, or otherwise relinquished under this Plan, Interests in and ownership of the Debtors shall remain unaltered.

## ARTICLE V
## DESIGNATION OF THE CLASSES OF CLAIMS IMPAIRED UNDER THIS PLAN

**5.1.    Voting Classes**. For purposes of Plan solicitation, Classes 3, 4, 5, 6, 10, 12, 13, and 14 are Impaired, Non-Insider Classes and, therefore, entitled to cast ballots on this Plan.

**5.2.    Non-Voting Classes**. For purposes of Plan solicitation, all other Classes are not Impaired or are Insider Classes and thus not entitled to vote.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1.    Substantive Consolidation of Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company**. Debtors Everlast Epoxy Systems, Inc. and Everlast Epoxy Flooring Company shall be deemed substantively consolidated on the Effective Date.

**6.2.    Contribution from Individual Debtors**. On or before the Effective Date, Debtors David and Brandi Linton shall contribute $250,000.00 to the Business (the "Contribution)".

**6.3.    Payments due on the Effective Date and Thereafter**. The Contribution and proceeds from Business operations shall be used to pay all required payments on the Effective Date and all payments due under the Plan on an on-going basis.

**6.4.    Causes of Action**. Debtors shall be responsible for evaluating, funding and pursuing any or none of the Causes of Action based on reasonable business judgment and shall fund such amounts as the Debtors, in their sole and absolute discretion, shall deem appropriate and reasonable.

**6.5.    Authority for Settlement of Causes of Action**. After the Effective Date, Debtors shall, in their sole and absolute discretion, be authorized to compromise and settle any Causes of Action, without Court approval or notice to any party, at any time, and for any consideration that Debtors believe to be in their best interests (and not necessarily in the best interest of the Creditors) including, inter alia, the right to permit the Debtors to accept zero-cash or non-cash benefits.

**6.6.    Recovery from Causes of Action.** Any recovery from any Causes of Action, including Avoidance Actions, either from litigation or settlement, will be used by the Reorganized Debtors for operations and/or to fund the payments due under the Plan.

**6.7.    Retention of the Debtors' Property**. On the Confirmation Date, all property shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, and encumbrances except for those Liens expressly created or preserved under this Plan.

# ARTICLE VII
# TREATMENT OF EXECUTORY
# CONTRACTS AND UNEXPIRED LEASES

**7.1.    General Assumption of Executory Contracts.** All leases of real or personal property and all other executory contracts to which a Debtor is a party that are not specifically identified herein or that have not been rejected by prior Order are hereby assumed as of the Effective Date. Debtors reserve the right to alter and amend any list of assumed contracts up to the Effective Date.

**7.2.    Right to Rescind Notice of Assumption**. Notwithstanding anything herein to the contrary, a Debtor shall not be obligated to assume a lease or other executory contract if it disagrees with any Cure Claim Amount determined by Final Order. In the event that a Debtor and the other party to an agreement or lease cannot reach agreement on the Allowed Cure Claim, and the counterparty Files a Claim for damages as required in section 7.4 hereof, then the Debtor shall have a period of thirty (30) days after the date on which the order establishing the Cure Claim becomes a Final Order in which to rescind its notice of assumption of the lease or executory contract. If the Debtor files a notice of intent not to assume any such lease or contract during this period, then the contract shall be rejected upon filing of the notice, and the other party to any rejected contract shall be entitled to file a Claim for damages arising from the rejection, if any.

**7.3.    Assumption or Rejection of Executory Contracts Prior to Effective Date**. Nothing in this Plan precludes a Debtor from Filing at any time prior to the Effective Date a separate motion or notice to assume or reject one or more leases or executory contracts, which motion or notice may require resolution of the Cure Claim prior to the deadlines set forth in this Article VII of the Plan.

**7.4.    Claims for Damages**. Each Person who is a party to an executory contract or lease rejected pursuant to Article VII the Plan shall be entitled to File, not later than thirty (30) days after the entry of the Confirmation Order, a Claim for damages alleged to arise from the rejection of the executory contract or lease to which such Person is a party. Any such Claims that ultimately become Allowed Claims shall be treated as Unsecured Claims.

## ARTICLE VIII
## PROVISIONS FOR THE PAYMENT, SETTLEMENT, AND ADJUSTMENT OF CLAIMS

**8.1.    No Distributions Pending Allowance or Estimation of Claims**. No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim as determined by Final Order.

**8.2.    Deadline for Objections to Claims.** Debtors or any other party in interest may file with the Bankruptcy Court, on or before the Claims Objection Deadline, which date may be extended by Bankruptcy Court order, a written objection to the allowance or classification of any Claim in any Class, which objection shall be served upon the Claimant and any other known parties in interest. The failure to object to or to examine any Claim for the purposes of voting on this Plan shall not be deemed a waiver of such party's right to object to, or re-examine, the Claim in whole or in part within the above-described time period.

**8.3.    Distribution Address and Mailing Method.** Any distribution or payment to a Creditor shall be sent by first class mail to the Creditor's address indicated on the proof of claim filed by that Creditor in the Case or, if no proof of claim has been filed, to that Creditor's most recent address indicated on the Debtor's Schedules or known to Debtor. Creditors may change the address to which distributions are sent through amendment of their proof of claim or written notice delivered to Debtors' counsel. Creditors are responsible for keeping the Debtor informed of their current address for receipt of distributions or other payments under the Plan.

**8.4.    Unclaimed Property/Forfeit Distributions**. If any distribution remains unclaimed and/or uncashed for a period of ninety (90) days after the final distribution pursuant to Section 1194, then the provisions of Section 347(a) shall govern.

**8.5.    Treatment of Contingent or Unliquidated Claims**. Until such time as a contingent Claim becomes fixed and Allowed, such Claim shall be treated as a Contested Claim for purposes related to voting, allowance, and distributions under this Plan. Upon request by Debtors or any other party in interest, the Bankruptcy Court shall, in a summary proceeding for

each such contingent Claim or unliquidated Claim, by estimation determine the allowance of each such contingent or unliquidated Claim for purposes of voting on this Plan.

**8.6.    Payment Dates**. Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next business day.

**8.7.    Averaging of Payment Amounts**. For any periodic Distributions under this Plan that are variable in amount, the Debtors are permitted, but not required, to make Distributions based on the average amount of such payments over such period of time as payments are required hereunder.

**8.8.    Nominal Distributions**. With respect to any distribution prior to the Final Distribution, if the Holder of an Allowed Claim would receive less than $50.00, the Debtors may choose not to distribute such lesser amount to such Holder, but may instead defer the distribution thereof until the cumulative amount to be distributed to such Holder at any subsequent distribution is $50.00 or more. No interest on any such deferred amount shall be paid to such Holder.

# ARTICLE IX
# RETENTION AND PURSUIT OF CAUSES OF ACTION

**9.1.    Preservation of Claims and Causes of Action**. Debtors retain and reserve all Causes of Action, which include Avoidance Actions, for pursuit, settlement or abandonment by Debtors post-confirmation and after the Effective Date. It is the intent of the Debtors that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtors' Schedules or otherwise.

Unless an Avoidance Action or other Cause of Action against a Creditor or other Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, Debtors expressly reserve such Avoidance Action or Cause of Action for later adjudication (including, without limitation, Avoidance Actions and Causes of Actions not specifically identified or of which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believes to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Avoidance Action or Cause of Action upon or after the Confirmation or Substantial Consummation of the Plan based on the Plan or the Confirmation Order, except where such Avoidance Action or Cause of Action has been expressly released in the Plan or other Final Order. In addition, Debtors expressly reserve the right pursuant to the Bankruptcy Code to assert or adopt as a defense any claims in any lawsuit in which a Debtor is a defendant or an interested party, irrespective of whether a Cause of Action has been commenced based upon such claim.

Except as otherwise provided in the Plan or Confirmation Order, any person to whom a Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or

otherwise), or who has received services from a Debtor or a transfer of money or property of a Debtor, or who has transacted business with a Debtor, or leased equipment or property from a Debtor should assume that such obligation, transfer, or transaction will be reviewed by Debtor subsequent to the Effective Date and will, if appropriate, be the subject of a Cause of Action after the Effective Date, whether or not (i) such Person has filed a proof of Claim in this Chapter 11 Case; (ii) such Person's proof of Claim has been objected to by a Debtor; (iii) such person's Claim was included in a Debtor's Schedules; or (iv) such Person's scheduled Claim has been objected to by a Debtor or has been identified by a Debtor as Disputed, contingent, or unliquidated. Except as expressly provided in the Plan, the Confirmation Order shall not bar a Debtor by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting or defending any matter, Avoidance Action or Cause of Action.

The Plan also retains and reserves for pursuit by Debtors all Avoidance Actions arising under Chapter 5 of the Bankruptcy Code. Without limiting the foregoing, Debtors also retain and reserve the right to collect accounts receivable and every other right to payment.

**9.2. Pursuit and Settlement of Causes of Action.** Debtors retain all rights to commence and pursue, as appropriate, any and all Causes of Action and Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in this Chapter 11 Case. Debtors have broad discretion to pursue, settle or abandon Causes of Action and Avoidance Actions; however, the Debtors shall not be required to pursue Causes of Action or Avoidance Actions and may in their sole discretion determine not to pursue any Causes of Action or Avoidance Action. After the Effective Date, Debtors shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action and Avoidance Actions without the consent or approval of any third party and without any further order of Court. Any settlement may be for any consideration that Debtors believe to be in their best interest (and not necessarily in the best interest of the creditors) including, inter alia, the right to permit Debtors to accept zero-cash or non-cash benefits. Any creditor determined to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to Debtors the determined amount of the avoided transfer prior to receiving any distribution under the Plan.

## ARTICLE X
## EFFECT OF CONFIRMATION, INJUNCTION, RELEASES, AND DISCHARGE

**10.1. Vesting of Property**. If the Plan is confirmed under § 1191(a), then except as otherwise provided in the Plan or Confirmation Order, (i) Confirmation vests all property of the Estate in the Debtor, and (ii) after Confirmation, the property dealt with by the Plan is free and clear of all Claims, Interests, and encumbrances.

If the Plan is confirmed under § 1191(b), then except as otherwise provided in the Plan or Confirmation Order, property of the Estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, after the Petition Date but before the case is closed, dismissed, converted or successfully completed, whichever occurs first.

**10.2.    Property Free and Clear**. Except as otherwise provided in the Plan, all property dealt with by the Plan shall be free and clear of all Claims, Liens and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

**10.3.    Legal Binding Effect**. The provisions of this Plan shall bind all Claimants, whether or not they accept this Plan or whether or not their Claim is Impaired.

**10.4.    Modification of Loan Documents**. After Confirmation, a Debtor shall have no obligation whatsoever to execute new or modified loan or security agreements reflecting the terms of this Plan or the treatment of Secured Claims hereunder.

**10.5.    Release of Claims**. The consideration to be distributed under the Plan shall be in full and complete satisfaction, settlement, discharge, and release of, and in exchange for all Claims against a Debtor and assets or properties, including without limitation any Claim accruing after the Petition Date and prior to the Effective Date.

**10.6.    Permanent Injunction**. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors who have held, hold or may hold Claims that existed prior to the Effective Date and all Persons who have had any dealings with a Debtor are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against a Debtor or any of its assets or owned entities on account of Claims against a Debtor, or on account of claims released pursuant to this Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against a Debtor or any assets or property of same; or (iii) creation, perfection or enforcement of any encumbrance of any kind against a Debtor arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date that is not addressed by the Plan, nor does it apply to any non-debtor, nor does it enjoin the determination in the Bankruptcy Court of the Allowed Amount of any Claims that arose prior to the Effective Date. Parties asserting entitlement to payment of Administrative Expenses incurred Prior to the Confirmation Date and Holders of Claims shall be permanently enjoined from asserting any Claim against the Debtors or the Retained Assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under section 502 of the Bankruptcy Code or claims against third parties or their property, including the pursuit of any lien claims. This provision does not apply to any non-debtor.

**10.7.    Exculpation**. Except as otherwise provided in the Plan or Confirmation Order, Debtors and Debtors' professionals shall neither have nor incur any liability to any Person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 Case, including without limitation actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan or any contract, instrument, release or

other agreement or document created or entered into in connection with the Plan. This provision does not apply to any non-debtor.

**10.8.  Releases.** Debtors are released and discharged from any and all claims, lawsuits or demands that have been, could have been, or which may in the future be asserted by any creditor or by any other Person for any act or omission in connection with or arising out of transactions, relationships, or dealings relating to the negotiation or implementation of the Plan, the settlement of Claims and releases incorporated in the Plan, the solicitation of votes for or confirmation of the Plan, any Pre-Petition or Post-Petition Claim of any kind, and any other matter pertaining to the administration or existence of the Chapter 11 Case, except for fraud, willful misconduct or gross negligence as determined by a Final Order.

**10.9.  Discharge of Claims.** The Debtors shall receive a discharge of all debts, as set forth more fully below, arising before the Effective Date; however, the timing of the discharge will depend on whether this Plan is confirmed as a consensual plan or a cramdown plan pursuant to Bankruptcy Code sections 1191(a) or (b), respectively. *See* 11 U.S.C. § 1181(c).

**(1)  Consensual Plan – Discharge Under Bankruptcy Code section 1141(d)**

If this Plan is confirmed pursuant to Bankruptcy Code section 1191(a), the Debtors shall receive a discharge pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

**(2) Cramdown Plan – Discharge Under Bankruptcy Code section 1192**

If this Plan is confirmed as a cramdown plan pursuant to Bankruptcy Code section 1191(b), the Debtors shall receive a discharge "as soon as practicable after completion by the [Debtors] of all payments due within the [Commitment Period] . . . ." *See* 11 U.S.C. § 1192. Except as otherwise specifically provided in the Plan or in any contract, instrument, or other

agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section Bankruptcy Code 501; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date and the completion of all Distributions contemplated under the Plan.

# ARTICLE XI
## MISCELLANEOUS PROVISIONS

**11.1.    Request for Relief under Section 1129(b) and 1191(b)**. In the event any Impaired Class of Claims shall fail to accept this Plan in accordance with section 1129(a) of the Bankruptcy Code, Debtors request the Bankruptcy Court to confirm this Plan in accordance with the provisions of section 1191(b) of the Bankruptcy Code.

**11.2.    Acceptance of Plan by Secured Creditor is Acceptance for Deficiency Claim**. If a Creditor holds a Secured Claim and also a Deficiency Claim, such Creditor's acceptance of the Plan on account of its Secured Claim shall also be deemed an acceptance on account of its Deficiency Claim without the need to submit a separate ballot.

**11.3.    Determination of Funds Available for Distribution.** Notwithstanding anything herein to the contrary, funds available for distribution to Unsecured Claims shall be adjusted by an amount equal to Administrative Claims Allowed under section 503(b) of the Bankruptcy Code and to the extent Secured Claims or Priority Claims exceed the amount(s) proposed to be distributed on account of such Claims.

**11.4.    Security Deposits.** To the extent a Debtor has posted security deposits (with utilities or otherwise) Pre-Petition, those amounts may be set off against Allowed Claims only upon the written consent of the Debtor, as set forth in this Plan or upon entry of a Final Order authorizing such offset. To the extent a Debtor has posted security deposits (with utilities or otherwise) Post-Petition, the deposits shall be returned to such Debtor or otherwise applied as directed by the Debtor upon its request.

**11.5.   Confirmation Order and Plan Control.** To the extent the Confirmation Order and/or the Plan is inconsistent with any other agreement entered into between a Debtor and any third party, the Plan controls any such agreements, and the Confirmation Order (and any other Orders of the Court) shall be construed together and consistent with the terms of the Plan.

**11.6.   Consent to Jurisdiction.** By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim or objection to the assumption or assignment of any assumed contract, by voting on the Plan, or by entering an appearance in the Case, all Creditors and other parties in interest have consented, and will be deemed to have expressly consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Case, including the matters and purposes set forth in the Plan.

**11.7.   Post-Confirmation Notice.** After the Confirmation Date, notice to creditors shall be as prescribed by the Bankruptcy Code. To ease any unnecessary administrative expense to the Debtors or Subchapter V Trustee, after the Effective Date, any party may request to limit notice to any party directly affected by any motion, objection or request for relief.

**11.8.   Case Closing.** Debtors shall be responsible for preparing and filing any required motion to close the Chapter 11 Case. Debtors shall be entitled to seek closure of the Chapter 11 Case as soon as possible after Substantial Consummation, and this Chapter 11 Case may be closed notwithstanding the occurrence of the Effective Date or the pendency of any claims objections, other contested motions, Causes of Action or Avoidance Actions, over which the Court shall retain jurisdiction.

**11.9.   Destruction of Records.** After the Confirmation Date, Debtors shall have the right to destroy or cause to be destroyed records that they determine to no longer be needed. Any objection to the destruction of such records must be raised as an objection to confirmation of the Plan or shall be deemed to be waived.

**11.10.   Headings**. All heading utilized in this Plan for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

**11.11.   Due Authorization**. Each and every Claimant who elects to participate in the Distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against a Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

**11.12.   Further Assurances and Authorizations**. Debtors, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan. All terms and provisions of this Plan shall be construed in favor of the Debtors.

**11.13.   Additional Acts or Actions**. Debtors may, but shall not be obligated to, take any action or commit any act that they determine to be necessary to facilitate the consummation, implementation, effectuation, and execution of this Plan.

**11.14.   Applicable Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the internal laws of the State of Tennessee without reference to the laws of other jurisdictions.

**11.15.    No Interest**. Except as expressly provide for in this Plan or allowed by the Court, no interest, penalty, or late charge is to be Allowed on any Claim after the Petition Date.

**11.16.   No Attorneys' Fees**. No attorneys' fees will be paid with respect to any Claim except as specified herein or as allowed by a prior order of the Court.

**11.17.   Post-Confirmation Actions**. After Confirmation, the Reorganized Debtors may, so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the Plan. The Reorganized Debtors may also, but shall not be obligated to, take any action or commit any act that they may deem to be necessary to facilitate the consummation, implementation, effectuation, and execution of this Plan. Nothing contained in the Plan shall be construed to limit the rights of the Debtors to commence or prosecute any claim in any court of competent jurisdiction.

**11.18.   Severability; Separate Plan.** Should any provisions in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan. This Plan is a separate and individual Plan for each Debtor, and as such each Debtor shall be treated as a separate entity under the Plan except in the case, and to the extent, of substantive consolidation.

**11.19.   Setoff**. Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which a Debtor has an interest in satisfaction of that Creditor's Pre-Petition Claim; provided, however, that notwithstanding any other provisions of this Plan, whenever mutual obligations exist between the Debtors and the Holder of an Allowed Claim or Interest, such obligations may be setoff if and to the extent agreed between a Debtor and such Claim or Interest Holder.

**11.20.   Notice of Default**. In the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to Debtors, with copies to counsel of record for Debtors, specifying the nature of the default. Upon receipt of the default notice, Debtors shall have fifteen (15) days to cure such default from the time of receipt of the default notice. If such default has not been cured within the applicable time period, the Creditor affected by the default may move the Court on an *ex parte* basis for an order authorizing the Creditor to enforce its rights under the Plan. The *ex parte* motion shall be supported by an affidavit identifying the default, attesting that the written notice of the default was provided to the Debtors, and further attesting to

the Debtors' failure to cure the default. This default remedy is provided pursuant to section 1191(c)(3)(B) of the Bankruptcy Code.

**11.21.   No Tax or Filing Fee.** No governmental entity may tax any transfer of property pursuant to or in furtherance of the Plan or charge any tax or fee for the recording of, any release, deed, transaction or other document executed pursuant to or in furtherance of the Plan.

**11.22.   Notices**. All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.

**11.23.   Post-Confirmation Professionals**. After Confirmation, the Reorganized Debtors may continue to utilize services of professional persons employed during the Chapter 11 Case and shall compensate such professionals in the ordinary course of business with no requirement for such professionals to seek approval for compensation from the Bankruptcy Court after filing of a final fee application under section 2.1(b) of this Plan.

## ARTICLE XII
## LIQUIDATION ANALYIS

To obtain confirmation of the Plan, a Debtor must show that each Holder of an impaired Claim or Interest has accepted the Plan, or that each Holder will receive or retain under the Plan on account of the Holder's Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such Holder would receive or retain if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code on said date. As set forth below, this Plan satisfies the "best interests of creditors" test.

As demonstrated by the Liquidation Analysis for Debtor Everlast Epoxy Systems, Inc. attached to this Plan as **Exhibit D**, a hypothetical Chapter 7 liquidation would result in no funds available for unsecured creditors. By contrast, this Plan proposes payment of Disposable Income of the Business to unsecured creditors during the Commitment Period. Debtor Everlast Epoxy Flooring Company has *de minimis* assets and will be substantively consolidated with Everlast Epoxy Systems, Inc. on the Effective Date.

The vast majority of Debtors David and Brandi Linton's unsecured claims relate to guarantees of Business debts. Their contribution of $250,000.00 will make possible the payment of all debts due to be paid on the Effective Date, provide working capital for the Business, and thereby enable a combined distribution to unsecured creditors from the Business and the individuals of substantially more than would be available if the assets of both the Business and individuals were liquidated in a hypothetical Chapter 7 case. The Liquidation Analysis for the individual Debtors is attached to this Plan as **Exhibit E**.

# ARTICLE XIII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over this Chapter 11 Case and any of the proceedings related to this Chapter 11 Case pursuant to section 1142 of the Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to implement the Plan. Without intending to limit the generality of the foregoing, the Court shall have exclusive jurisdiction:

(a)     To determine any and all objections to the allowance, extent, priority or nature of any Claims, the amount and proper classification of the Claim of any Holder and the determination of such objections as may be filed to any Claims.

(b)     To determine any and all applications for compensation and reimbursement pursuant to section 330 of the Code.

(c)     To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof.

(d)     To determine any and all applications, adversary proceedings and contested matters that may be filed in this Court.

(e)     To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan and to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan.

(f)     To cause the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

(g)     Except as otherwise provided in the Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan.

(h)     To determine all questions and disputes regarding title to Debtors' assets, and determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between a Debtor and any other person, including but not limited to, any rights of a Debtor to recover assets pursuant to the provisions of the Code or applicable state or federal law and the rights, obligations, and liabilities of the respective parties under any asset purchase agreements relating to the sale of a Debtor's assets.

(i)     To exercise the jurisdiction granted pursuant to section 505(a) and (b) of the Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by a Debtor.

**(j)** To enforce all injunctions and mandatory acts provided for in this Plan or in the Bankruptcy Code.

**(k)** To enter a Final Order concluding and terminating this case; and

**(l)** To determine such other matters as may be provided for in the Confirmation Order.

*[signatures to follow on next page]*

DATED:  June 20, 2024.


**EVERLAST EPOXY SYSTEMS, INC.**


*/s/ David Linton*
David Linton, CEO


**EVERLAST EPOXY FLOORING COMPANY**


*/s/ David Linton*
David Linton, CEO


**DAVID AND BRANDI LINTON**

*/s/ David Linton*
David Linton, in his individual capacity


*/s/ Brandi Linton*
Brandi Linton, in her individual capacity


* * * * * * * * * * * * * * * * * * * * * * * * * *


Respectfully Submitted,


*/s/ Robert J. Gonzales*
Robert J. Gonzales (robert@emerge.law)
Nancy B. King (nancy@emerge.law)
EMERGELAW, PLC
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535

*Proposed Counsel for Debtors and Debtors in Possession*